

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH THE CELLULAR<br>DEVICE ASSIGNED CALL NUMBER (615) 821-4319<br>WITH IMEI / ESN 310410969725640 | )<br>)<br>)<br>)<br>)<br>)    Case No. M-19-*346* -STE |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Possession of Methamphetamine with Intent to Distribute |

The application is based on these facts:

See Affidavit, attached hereto

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Rodney Johnson, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/27/19

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(615) 821-4319** [with International Mobile Subscriber Identity/Electronic Serial Number **310410969725640**] ("the Account"), that are stored at premises controlled **AT&T** ("the Provider"), headquartered at **11760 US HWY 1, SUITE 300, NORTH PALM BEACH FL., 33408.**

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **June 1, 2018 through February 8, 2019.**

   a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

2

    v.   Length of service (including start date) and types of service utilized;

    vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

3

ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 (Unlawful Possession with Intent to Distribute of a Controlled Substance and Conspiracy) involving SHAWN MICHAEL THIBEAULT during the period **June 1, 2018 through February 8, 2019.**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.



## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH THE CELLULAR DEVICE
ASSIGNED CALL NUMBER **(615)
821-4319** WITH INTERNATIONAL
MOBILE SUBSCRIBER IDENTITY /
ELECTRONIC SERIAL NUMBER
**310410969725640**, THAT IS
STORED AT PREMISES
CONTROLLED BY **AT&T**

Case No. *MJ-19-346-STE*

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, **RODNEY JOHNSON**, being first duly sworn, hereby depose and

state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a

search warrant for information associated with a certain cellular telephone

assigned call number **(615) 821-4319**, with International Mobile Subscriber

Identity/Electronic Serial Number **310410969725640** ("the SUBJECT

PHONE"), that is stored at premises controlled by **AT&T**, a wireless

telephone service provider headquartered at **11760 US HWY 1, SUITE 300,**

**NORTH PALM BEACH FL., 33408.**  The information to be searched is

described in the following paragraphs and in Attachment A.  This affidavit is

made in support of an application for a search warrant under 18 U.S.C. §

2703(c)(1)(A) to require **AT&T** to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.    I have been employed as a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations (HSI) and its predecessor the United States Customs Service since October 1997.  I am currently assigned to the Office of the Resident Agent in Charge, Oklahoma City, Oklahoma (RAC/OC).  As part of my daily duties as an HSI Special Agent, I investigate criminal violations of federal law, including violations of Title 18, United States Code, Section 545, Smuggling Goods into the United States; Title 22, United States Code, Section 922(g)(5), Alien Illegally or Unlawfully in the United States; Title 21, United States Code, Section 952, Importation of Controlled Substances; and Title 21, United States Code, Section 841, Possession with Intent to Distribute a Controlled Substance (collectively, the "Specified Federal Offenses").

3.    I have specific training and experience in numerous methods of investigation, including, but not limited to, electronic and visual surveillance, general questioning of witnesses, the use of search warrants, the use of

confidential sources/informants, the use of pen registers, and the use of undercover agents. Based on my training and experience relating to the investigation of drug traffickers, and based upon interviews I have conducted with other officers, defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways that drug traffickers conduct their business. My familiarity includes the various means and methods by which drug traffickers import and distribute drugs, their use of cellular telephones and other electronic devices, their use of vehicles, and their use of numerical codes and code words to conduct drug transactions. I am also familiar with the ways that drug traffickers conceal, convert, transmit and transport their drug proceeds, including, but not limited to, the use of couriers and vehicles to transport currency and proceeds, and the use of third parties to purchase or hold title to assets.

4.     I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation referred to in this affidavit and information summarized in reports I have reviewed. I have compiled information derived from numerous discussions with experienced law enforcement officers, including Special Agents of HSI and other State and Local law enforcement officers.

3

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 (Unlawful Possession with Intent to Distribute of a Controlled Substance and Conspiracy) have been committed by SHAWN MICHAEL THIBEAULT ("THIBEAULT") and others.   There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

7.     On February 8, 2019, at approximately 1022 hours, Oklahoma Bureau of Narcotics (OBN) Agent Nathan Hartsburg observed a 2017 Silver Volvo S90 (TN 7N33v4) travelling eastbound on I-40 near El Reno in the Western District of Oklahoma.   Agent Hartsburg paced the Volvo and determined that it was travelling at approximately 75 miles per hour, in excess of the 70 mile per hour posted speed limit.   The driver and sole occupant of the vehicle was identified as THIBEAULT When Agent

4

Hartsburg contacted him, THIBEAULT admitted that he had set his cruise control on 74, in excess of the posted speed limit and consistent with Agent Hartsburg's observations. The registered owner of the vehicle was a third party in Tennessee.

8.     When asked, THIBEAULT identified the registered owner and claimed that he had purchased the vehicle from him and that once he was done paying off the car, the title would be placed in his name.   Routine records checks revealed that THIBEAULT had an outstanding arrest warrant from the State of Montana.   Agent Hartsburg originally believed that the warrant was a non-extradition warrant, issued THIBEAULT a warning and released him. When his dispatcher informed Agent Hartsburg that it was an extradition warrant, Agent Hartsburg initiated a second traffic stop based on the warrant and placed THIBEAULT under arrest.   Upon his arrest, law enforcement officials began to conduct an inventory search of the vehicle.  As the inventory search began, THIBEAULT became very agitated and aggressive, stating that he did not consent to a search of his vehicle and that he did not want agents searching the vehicle.

9.     As the search began, agents first discovered $3,096 dollars in cash which was secured as evidence by Agent Hartsburg.   THIBEAULT expressed no interest in the cash, which seemed odd to Agent Hartsburg.

5

THIBEAULT reiterated that he did not want agents to inventory his vehicle and claimed that there was "expensive art" in the vehicle. As the search continued, agents discovered a silver suitcase in the trunk of the car which contained 25 bundles which later field tested positive for the presence of cocaine. The 25 bundles weighed approximately 25 kilograms. Based on my training and experience, such large quantities of cocaine indicate that the drugs were intended for re-distribution and not for personal use.

10.    After discovery of the cocaine, THIBEAULT engaged Agent Hartsburg in conversation and told him "If I don't check in, in an hour, my whole family is dead." When Agent Hartsburg asked if he wanted to talk to someone, THIBEAULT reiterate that his family was in danger and said "I don't have no choice, but to grab that, and put it where it needs to go.   I wasn't put in a fucking position to just say no." Based on my training and experience, THIBEAULT was claiming that the individuals who owned the drugs were tracking his movements, that he had to check in at certain intervals to confirm his progress (to prevent any kind of controlled delivery by law enforcement) and that he or his family had been threatened with harm if he refused to deliver the cocaine.

11.    After the cocaine was discovered, the inventory search continued. In the car, agents discovered a series of receipts with dates leading up to the

date of arrest. Those receipts indicated that THIBEAULT was in Tennessee on January 25, 2019, and then travelled from Pasadena, California on February 5, 2019 through Arizona and Texas before he was arrested on February 8, 2019 in Oklahoma. Also located in the car was a slip of paper that had names and dollar amounts on it and which appeared, in my experience, to be a partial drug ledger. Based upon my training and experience, I believe that THIBEAULT was working to pick up and transport drugs from California back to Tennessee and based on the existence of the drug ledger was involved in further distribution of the drugs.

12.    Among other evidence seized from THIBUEALT was: (1) White iPhone with a Black Case; (2) Black Motorola Phone, with IMEI 351838092805785; (3) Black Samsung Phone, IMEI 356905090880782; and (4) Black Prepaid TracFone Wireless. On February 28, 2019, U.S. Magistrate Judge Shon Erwin signed a search warrant that authorized a search of those phones. In executing that warrant, HSI was able to access all but the White iPhone, which is the SUBJECT PHONE in this affidavit. Due to encryption and other issues a download could not be accomplished and the contents of the SUBJECT PHONE remain unknown.

13.    The other three phones were successfully downloaded and the contents reviewed. Each of those phones had the appearance of being a

"burner phone" meaning a phone that is obtained and used for a short period of time in connection with one or only a few drug trafficking activities. In my experience, drug traffickers use burner phones to help avoid law enforcement scrutiny.   By changing phones frequently, it is more difficult for law enforcement to track and follow long term drug activity.  The three phones in question appeared to be burner phones in my experience because each one: (1) covered only a short period of time (from approximately December 2018 to the date of arrest February 8, 2019); (2) contained extensive drug related conversation; (3) THIBEAULT was in possession of 4 cell phones, a number which in my experience indicates that one or more of them are burner phones; and (4) was otherwise devoid of a significant amount of other content (e-mails, web browser activity, contacts, text messages etc. ) that one would typically expect to find on a phone used on a more regular, longer term basis for legitimate purposes.

14.    Additional investigation has revealed evidence indicating that THIBEAULT was and has been a long term and significant trafficker in cocaine.  For instance, on one of the burner phones THIBEAULT received a message from 206-948-3901 which provided as follows:

> **K. After the last from D we are at 2M.  You also have your credit coming with P.   Just keep your spreadsheet updated and add your Mo.  Thinking you should be able to get 22 23**

THIBEAULT responded to that message a few minutes later with the following:

> **Made two trips now making third ! With the 390 got 15 so now have 450 plus 150 minus some expenses ten for for t and about another ten for rents and travel ! So 580 is totals this trip ! So getting 22.**

Both of these messages were sent on January 31, 2019, approximately a week before THIBEAULT's arrest.  In my training and experience, the discussions above reflect conversations consistent with drug trafficking activity. Specifically, the numbers discussed are consistent with the wholesale prices of cocaine.  When THIBEAULT writes, "With the 390 got 15" I believe he is referring to 15 kilograms of cocaine for $390,000, which is approximately $26,000 per kilogram.   Later, THIBEAULT says, "580 is totals this trip!  So getting 22" which I believe is a reference to 22 kilograms of cocaine for $580,000, which is just a little over $26,000 per kilogram.   Based on my training and experience, bulk cocaine from Mexico can presently be purchased for approximately $26,000.  Moreover, THIBEAULT was arrested

with 25 kilograms of cocaine, within a reasonable range of his stated intention of getting 22 as reflected in the message above.

15.    Based on the foregoing, it is apparent that THIBEAULT has engaged in multiple trips from Tennessee to California and back, bringing in substantial quantities of cocaine each time (the first text quoted above indicates up to $2,000,000 worth of cocaine).   In the present case, bank receipts also confirm that THIBEUALT was in Tennessee and travelled to California and then was returning back to Tennessee at the time of his arrest.  Because most of the phones in his possession were burner phones, I believe that the SUBJECT PHONE is THIBEAULT's primary personal phone that he uses for everyday use.  I have obtained toll and subscriber data from the SUBJECT PHONE by way of administrative subpoena.  Information returned pursuant to that subpoena establishes that the SUBJECT PHONE has been in use since June of 2018 and is in the name of a pre-paid company – Tracfone Wireless.   The report of made or received contacts with the SUBJECT PHONE reveals over 16,000 contacts from June of 2018 through February 11, 2019.   While I do not yet know if THIBEUALT used this personal phone for drug related communications, it appears based on the extensive use over this time period, and the fact that he had this phone with him at the time of his arrest, that THIBEAULT carries this personal phone

10

with him in connection with his drug trafficking trips to and from California. Thus, historical cell site data connected to the SUBJECT PHONE would and could reveal THIBEUALT's travels to and from California and corroborate the multiple cocaine trafficking trips discussed on his burner phones.

16.   In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

11

17.    Based on my training and experience, I know that **AT&T** can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18.    Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

12

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

20. I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **AT&T** who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

RODNEY JOHNSON
Special Agent
Department of Homeland Security,
Homeland Security Investigations
(HSI)

SUBSCRIBED AND SWORN to before me this 27th day of June, 2019.

SHON T. ERWIN
United States Magistrate Judge

13

## ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(615) 821-4319** [with International Mobile Subscriber Identity/Electronic Serial Number **310410969725640**] ("the Account"), that are stored at premises controlled **AT&T** ("the Provider"), headquartered at **11760 US HWY 1, SUITE 300, NORTH PALM BEACH FL., 33408.**

# ATTACHMENT B

## Particular Things to be Seized

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **June 1, 2018 through February 8, 2019.**

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 (Unlawful Possession with Intent to Distribute of a Controlled Substance and Conspiracy) involving SHAWN MICHAEL THIBEAULT during the period **June 1, 2018 through February 8, 2019.**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4